## No. 12,804.

JOSEPH W. BOWLES RESERVOIR COMPANY *v.* BENNETT ET AL.

(18 P. [2d] 313)

Decided November 28, 1932. Rehearing denied January 7, 1933.

Mr. HORATIO S. RAMSEY, Mr. L. WARD BANNISTER, Mr. S. M. JANUARY, for plaintiff in error.

Messrs. TWITCHELL, CLARK & BURKHARDT, for defendants in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE parties are not in entire accord as to the nature of this action which was instituted by the Bowles Reservoir Company against the defendant Bennett and others. We think, however, it is sufficiently exact to say that the action is in the nature of a bill in equity to quiet title, and for an injunction in respect to a senior ditch water right and a senior reservoir right owned by the plaintiff Bowles Company, as against Bennett and others, the defendants, who are the owners of a junior reservoir right in the same receptacle and who, in an attempt to exercise it, have interfered with the senior rights of the plaintiff which include a gravity system of water distribution by which the plaintiff enjoyed its priority. The answering brief of the defendants, as we read it, does not properly, or at all, question the material facts as alleged in the complaint. However this may be, the case was submitted to the trial court upon an agreed statement of facts. It will shorten the discussion to set forth at the outset of this opinion such agreed statement upon which the parties stipulated that the trial court might determine the controversy.

"Agreed Statement of Facts.

"It is hereby agreed and stipulated between the parties hereto, by their respective counsel, that the above entitled cause may be determined upon the following agreed statement of facts, in all respects as though said facts had been fully established by competent testimony, that is to say:

"That the plaintiff, The Joseph W. Bowles Reservoir Company, is the owner of a decreed priority of right to the use of water in the Bennet or Patrick Reservoir for five hundred fifty-five (555) acre feet of water as of December 22, 1892; that the defendant Laura O. Bennet, was the owner of a decreed priority in the Bennet or Patrick Reservoir for five hundred fifty-eight (558) acre feet of water as of July 2, 1910; that both of said decrees were entered in the general adjudication of priorities to the right to use of water in Water District No. 8, of Irrigation Division No. 1 of the State of Colorado, in the District Court at Castle Rock, on or about the 16th day of June, 1930, and that the defendants, Daniels, Ingwersen and Hazard are grantees of defendant, Bennet; that both of said decrees are in full force and effect; that the water decreed to both parties is needed for the proper irrigation of lands; that the water appropriated, diverted and used by the plaintiff has been withdrawn from the said Bennet or Patrick Reservoir by means of the gravity outlet, and that the capacity of said lake above said gravity outlet pipe to a point seven feet above the floor of said outlet is five hundred fifty-five (555) acre feet; that the capacity of said Bennet Lake or Reservoir below said outlet pipe is five hundred fifty-eight (558) acre feet; that it is not feasible for the plaintiff to lower its outlet.

"That the water diverted and used by the defendants has been taken from said reservoir by means of centrifugal pumps; that the plaintiff has not for the season of 1930 as yet withdrawn its full five hundred fifty-five (555) acre feet; that the defendants have not as yet withdrawn their five hundred fifty-eight (558) acre feet; that the defendants are pumping, and threaten to continue to pump water from said lake, even though by so doing they may lower the water level of said lake to a point where it will not flow out of the gravity outlet of the plaintiff, and that said withdrawal may result in the inability of plaintiff to withdraw its full decreed priority from said lake by its present gravity outlet.

"That the lake was filled to its capacity of approximately eleven hundred acre feet at the beginning of the irrigation season of 1930, and that no claim is made that the defendants have taken or threaten to take from said reservoir more than their decreed priority of five hundred fifty-eight (558) acre feet, and no claim is made that the defendants have not left, or will not leave in said lake the full five hundred fifty-five (555) acre feet of water belonging to the plaintiff under its decreed priority.

"The Bennet Lake or Reservoir is also used as a conduit by plaintiff for its direct priority for the Tule Ditch which enters said reservoir at the northwest corner, and that if the water level of said lake is lowered below the gravity outlet of plaintiff, plaintiff cannot use said lake as the conduit for said direct priority.

"That the use of water from said reservoir by the defendants has been over the objection and without the consent of the plaintiff."

Upon such stipulated facts the trial court entered a decree dismissing the action at the costs of the plaintiff and the plaintiff is here with this writ of error seeking a reversal.

In the opening brief of the plaintiff in error it is said that the nature of the action is as above stated. The plaintiff in error, who was plaintiff below, thus states the principal question for decision. It says that the principal question is one of law, namely, "where there are adjudicated senior and junior appropriations and where the senior method of diversion to the place of use always has been by gravity and where the senior adjudication decree so recognizes, may the junior, in the course of procuring his own water by pumping, interfere with the gravity system of the senior, or if he may do this and, thus make it necessary that the senior's water likewise be pumped," may the junior have the right to force the senior to bear the expense of the pumping necessitated by the interference, or may such expense be imposed by

the court upon the junior if he seeks to continue his pumping.

It will thus be seen that the question for decision here is not upon any issues of fact, but upon the law applicable to the stipulated facts. The defendants are not the owners of any ditch right. The plaintiff is the owner of an adjudicated ditch right as well as its rights in the reservoir. The following facts seem to be admitted by both parties. The plaintiff owns two water rights, one, a reservoir right and the other a ditch right, both of which have been adjudicated by the district court of Douglas county as priorities in water district No. 8. The ditch right was adjudicated, by virtue of original construction and use, to the Tule ditch as of date December 22, 1892, for 18.6 cubic feet of water per second of time from the seepage of the surrounding lands and from adjacent Marston reservoir and from waste waters from filters at and near this reservoir. The number of this ditch is $199\frac{1}{2}$ and the number of the priority is $234\frac{2}{5}$. This ditch has been used continuously ever since it was constructed and the adjudication decree provides that there shall flow into the same from the sources mentioned for the purpose of irrigation during the irrigation season, and for the purpose of storage during the storage season, 18.6 cubic feet of water per second of time.

The Bennet and Patrick Reservoir are one and the same—different names for the same thing. There was adjudicated thereto, by virtue of original construction and use, The Joseph W. Bowles Reservoir Company as claimant, from said sources of supply and as reservoir priority No. $234\frac{1}{5}$ to date from December 22, 1892, and through such ditch serving also as a feeder ditch and for storage for later irrigation, the amount of water that said reservoir will hold from the bottom of its outlet pipe to a point seven feet above the inside of the bottom of such pipe and found to be 24,141,440 cubic feet, or 555 acre feet of water. Said reservoir has a capacity below the inside of the bottom of said outlet pipe of 24,312,160

cubic feet or 558 acre feet, and since December 22, 1892, the date of the construction, has been filled to its capacity above the lowest point of the outlet pipe and such waters stored and used for irrigation. The reservoir consists of a natural depression that was diked up around the lower side and outlet pipe inserted. This reservoir also acts and has been and is used by the plaintiff as a carrier for the waters of said Tule ditch and has been so used by the plaintiff since the irrigation season of 1893, and in serving this function the reservoir amounts simply to a swelling in the Tule ditch between its head and the ultimate place of use. The amount of water decreed to the plaintiff's ditch and reservoir has been and is necessary for the irrigation of lands belonging to the stockholders of the plaintiff, and plaintiff has always withdrawn and obtained this decreed water, whether decreed to the ditch for direct irrigation or to the ditch and reservoir for storage for future use, from said reservoir by gravity through an outlet pipe and it is not feasible for the plaintiff to lower such outlet.

The defendants, other than Bennett, are her grantees of the water rights adjudicated by the same court in the same cause No. 807 entitled: "In the Matter of Priorities of Water Rights in District No. 8, in the State of Colorado" on the docket of that court, in what is known as the Bennet reservoir or the Patrick reservoir, the same being reservoir priority No. 253 in water district No. 8 for 24,312,160 cubic feet or 558 acre feet of water for agricultural and domestic use as of July 2, 1910, and with Laura Bennett as claimant. It will thus be observed that the defendants' reservoir priority is No. 253, dating from 1910, while the plaintiff's number is 234⅕ dating from 1892. The ditch and reservoir decrees of both plaintiff and defendants were rendered by the district court of Douglas county on June 16, 1930, in the general adjudication of priorities to the right to the use of water in that water district No. 8 and both are in full force and effect.

After the defendants made their reservoir appropriation and in the attempt to procure water by virtue of it, they installed a pumping plant and have continuously since that time and now are, pumping water from this reservoir for the irrigation of their crops and threaten to continue to pump, take and use water from such reservoir, even from below the bottom of plaintiff's outlet pipe, although by doing so they lower the level of the reservoir to such an extent that the plaintiff will not be able to withdraw the water represented by its decreed priorities, either for immediate irrigation or for storage, by its gravity outlet system, all of which has been without the consent and over the protest of the plaintiff.

At the time this suit was brought in July, 1930, plaintiff had not withdrawn for that season its decreed appropriation, nor had the defendants withdrawn their decreed appropriation, but the defendants were threatening to pump 558 acre feet, the amount of their decreed appropriation, even though, as the result of lowering the water level in the reservoir, the plaintiff would not be able to secure by gravity its decreed water. At the beginning of the irrigation season of 1930 the reservoir was filled to capacity and no claim is made that the defendants would take more than their 558 acre feet for themselves, or that they would not leave in the reservoir as much as 555 acre feet for the plaintiff. The defendants, although junior as reservoir appropriators, did not offer to substitute for the benefit of the plaintiff at their expense a pumping system for the prior gravity system of the plaintiff.

From the foregoing statement of the facts in this case it would seem, both upon principle and authority, that the senior ditch and reservoir rights of the plaintiff have unlawfully been interfered with by the defendants. Notwithstanding the ingenious argument of able counsel for defendants in error, we can reach no other conclusion than that the plaintiff's adjudicated senior appropriations, both for its ditch and its reser-

voir, which have always been enjoyed by gravity, have been injuriously affected and practically nullified by the defendants who, by pumping the water from the reservoir and using the same for irrigating their lands, have deprived the senior appropriator of the enjoyment of its senior right. The plaintiff, having the senior adjudicated right to use the water from this reservoir may not, against its will, be compelled to bear the expense of pumping the water upon its lands which by gravity would reach the same were it not that the defendants, by pumping the water from the reservoir, had diverted it to their own use and prevented the plaintiff from the enjoyment of its prior right to have the water thereof flow by gravity upon its lands which had been thus irrigated thereby before the defendants resorted to their plan of pumping.

Learned counsel for defendants, however, make the ingenious argument that the adjudication decree makes the plaintiff and defendants quasi tenants in common in the capacity of the entire reservoir; one, the plaintiff, having an interest to the extent of 555 acre feet of the priority as of December 22, 1892; the other, the defendants, having an interest to the extent of 558 acre feet as of priority of date July 2, 1910. We cannot agree with this contention. We think the plaintiff is right in saying that, in substance and legal effect, there are two distinct reservoirs, although occupying the same physical location. But if it be true that, in legal effect, the plaintiff and the defendants are quasi tenants in common, the plaintiff, who owns the priority as to 555 acre feet as of date 1892, certainly has a superior right as against the defendants whose priority as to 558 acre feet is of July, 1910. There is no sound basis upon which the defendants' argument can be based that an appropriator of water for irrigation, who is later in time, can be equal to, or superior in right, to another appropriator who is earlier in point of time. Yet that is virtually what the defendants here argue in their briefs. The plaintiff, as this water adjudication decree declares, has

24

the right prior in time to the use of the impounded waters of this reservoir to the extent of the quantity therein designated. The defendants may not, on any possible theory as junior appropriators of the same character, get the use of the impounded waters to the extent of their appropriation ahead of the plaintiff, which made its appropriation long before the defendants acquired any interest in and to the waters that came into this reservoir.

The judgment is therefore reversed, and the cause is remanded with instruction to the district court to vacate its judgment of dismissal heretofore entered herein, and in lieu thereof to render judgment for the plaintiff as prayed in its complaint. If, however, the defendants, within a reasonable time to be fixed by the district court, shall elect to continue as heretofore the pumping of water from the Patrick reservoir to irrigate their lands, such permission, in the court's discretion, may be granted, but only upon condition, among other things, that the defendants make up, at their own expense, and by other means than the gravity outlet, and to the extent of the deficiency caused to the plaintiff by their own withdrawals from the reservoir both in quantity of water and timeliness of delivery, as such quantity is represented by plaintiff's prior appropriations, including the appropriation by means of plaintiff's Tule ditch.

Mr. Justice Alter, having been called upon as a district judge to determine some matters in this case, declines to participate.